UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARILYN BROWN, et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) Case No. 4:19-cv-01864-MTS |
| ADAMS AND ASSOCIATES, INC., et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM AND ORDER**

Plaintiff Tambra Cross worked as a counseling manager for Defendant Adams and Associates ("Adams") until she was fired in May 2017. Cross filed this action in state court, claiming that Adams and Defendant Timothy Chambers violated the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. §§ 213.010–213.137. Specifically, Cross claims, first, that Chambers sexually harassed her, and second, that Adams retaliated against her for reporting the harassment to her direct superior. Defendants removed the case to this Court and now move for summary judgment on both of Cross's claims. Because there remain genuine disputes of material fact relevant to each claim, the Court will deny Defendants' Motion for Summary Judgment.

**I.      Background**

Adams is a Job Corps Center Operator, contracting with the United States Department of Labor to run various Job Corps Centers in the United States. Job Corps Centers provide educational and career-oriented services for young individuals. Adams operated the St. Louis Job Corps Center (the "Center") for the entirety of Cross's employment. Cross was initially hired by Adams in January 2016 as an academic instructor. After a promotion to site supervisor in June 2016, Cross again received a promotion, this time to the counseling manager position. Portions of

1

the record contain some dispute as to Cross's actual start date for this position.  However, Defendants set the date at September 28, 2016 in their Statement of Uncontroverted Material Facts, Doc. [70] ¶ 6, and Cross agrees that this is the proper date of her promotion.  Doc. [76] ¶ 6.

As counseling manager, Cross was tasked with overseeing case management and success teams, managing student progress evaluations, and more generally ensuring that the Center met its performance goals.  *Id.* ¶ 7.  Cross reported directly to Melissa Tran, the Center's deputy director.  Defendant Timothy Chambers took over as the executive director of the Center in January 2017, and Tran reported directly to Chambers from that time through Cross's firing in May 2017.

The record reflects that Tran was not entirely satisfied with Cross's performance.  She sent numerous emails to Cross between November 2016 and Cross's firing in May 2017 expressing displeasure with Cross on various work-related matters: attendance of students participating in the Center's programs, issues with student retention, and the accountability of counselors to Cross.  *Id.* ¶¶ 9–14, 24, 26–31.  Cross disputes the context surrounding many of these emails.  *See id.*  Tran also gave Cross her 90-day and 165-day evaluations, which are standard at Adams.  In the 90-day evaluation, Tran recommended retaining Cross, though she noted some concerns with Cross's work performance.  *Id.* ¶¶ 18–22; Doc. [70-11].  Cross disputes that Tran ever clearly conveyed that Cross was in danger of being fired.  *See* Docs. [70-27] at 1, [80] ¶ 270.

Meanwhile, Cross asserts that Chambers became flirtatious and made her uncomfortable after he began working at Adams.  Specifically, Cross accuses Chambers of frequently visiting her in her office alone, making unwelcome comments unrelated to work, and swirling his hand around in a candy bowl in her office while saying, "I don't think you have what I need."  Doc. [80] ¶ 125–31.  Cross further claims that on one occasion Chambers asked her to get him water and proceeded to watch her while she walked.  *Id.* ¶ 123.  Finally, Cross alleges that Chambers said to her, "[I]f

you want something from me, I need something from you." *Id.* ¶ 131.  Defendants dispute the occurrence of each of these events.  Doc. [91] ¶¶ 123–32.

Cross asserts that she reported Chambers's behavior to Tran on May 10, 2017, which Tran disputed in her deposition.  *Id.* ¶ 135.  Sometime after this meeting, Tran filed her 165-day evaluation for Cross, more than 165 days after Cross was promoted to counseling manager.  *See id.* ¶ 262; Doc. [70-22].  Tran recommended firing Cross, asserting ongoing problems with Cross's leadership and student retention.  Doc. [70-22].  It appears that Adams's normal disciplinary process differs for employees in the first 165 days of employment, who are in their "probationary" or "introductory" period, and "regular employees," who have been retained beyond their 165-day evaluation.  Cross argues that Adams's policy is to first warn probationary employees and seek to improve performance before deciding to fire them.  *See* Doc. [83] at 15–16.  The parties disagree whether the timing of Cross's 165-day evaluation is ordinary practice at Adams and also disagree as to when an employee graduates from "introductory" to "regular" employment status for disciplinary purposes.  *See id.*; Docs. [86] at 5, [91] ¶ 264, 270–74.

Cross claims that shortly after the May 10 meeting with Tran, she told Chambers his conduct was inappropriate, drawing an angry reaction from him.  Doc. [91] ¶ 141.  Cross was fired about two weeks after the claimed meeting with Tran.  Docs. [76] ¶ 55, [83] at 7.  She appealed the decision to fire her to Adams's human resources, but neither she nor Chambers was asked about her complaints to Tran, and her firing was upheld.  *Id.* ¶¶ 143, 151–52, 161; Doc. [76] ¶ 62. Cross brought this suit against Defendants, claiming both retaliation and sexual harassment in violation of the MHRA.  Defendants moved for summary judgment on both of Cross's claims.

**II.     Legal Standards**

"A court must grant a motion for summary judgment if the moving party shows that there

3

are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 996; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Liberty Lobby*, 477 U.S. at 248).

  The Court must view the evidence in the light most favorable to the nonmoving party—here, Cross—and give her the benefit of all reasonable inferences. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Where there is sufficient evidence supporting a factual dispute, it is up to the jury to resolve the dispute at trial. *Liberty Lobby*, 477 U.S. at 248–49. A fact is "material" if it "might affect the outcome of the suit under governing law." *Id.* Though there is no discrimination-case exception to summary judgment, *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011), "[u]nder Missouri law, '[s]ummary judgment seldom should be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence.'" *Wierman*, 638 F.3d at 1002 (alteration in original) (quoting *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664–65 (Mo. banc 2009)).

  For summary judgment purposes, a court must tether its analysis to the legal elements of the claims at issue. First, retaliation under the MHRA requires Cross to show that (1) she complained of discrimination, (2) her employer took adverse action against her, and (3) a causal

relationship existed between the complaint and the adverse action. *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019). The legal validity of the underlying discrimination complaint is immaterial to the success of the retaliation claim. *See Holmes v. Kansas City Pub. Sch. Dist.*, 571 S.W.3d 602, 612 (Mo. Ct. App. 2018). Second, a finding of sexual harassment in violation of the MHRA—whether titled as *quid pro quo* sexual harassment or otherwise—requires that (1) Cross be a member of a protected group, (2) she was subjected to unwelcome sexual harassment, (3) her gender was a contributing factor in the harassment, and (4) a term, condition, or privilege of employment was affected by the harassment. *Burlison v. Dep't of Pub. Safety*, 478 S.W.3d 577, 581 (Mo. Ct. App. 2016) (citing *Hill*, 277 S.W.3d at 665–66).

Previously, Missouri courts reviewed the causal element of MHRA claims on a "contributing factor" basis. This means that a plaintiff could succeed in her MHRA claim if the prohibited act was merely one contributing part of the adverse action against her. *See, e.g.*, *Holmes*, 571 S.W.3d at 611; *Porter v. City of Lake Lotawana*, 651 F.3d 894, 898 (8th Cir. 2011) (articulating the Missouri "contributing factor" standard as permitting a plaintiff to recover as long as "her complaint of discrimination was 'a reason' for" dismissal, compared to the federal-law requirement that it be "the reason").[1] However, on August 28, 2017, an amended version of the MHRA took effect that changed the standard to the more-demanding "motivating" factor approach, similar to the federal standards under Titles VII. *See* Mo. Rev. Stat. § 213.010(2) (defining "[b]ecause" or "because of" as "the motivating factor" behind an adverse employment decision); *see also Bram v. AT&T Mobility Servs., LLC*, 564 S.W.3d 787, 795 (Mo. Ct. App. 2018) (discussing Missouri's shift from the contributing to motivating factor standard). In cases similar to this one, Missouri courts have consistently applied the version of the law in effect at the time of

---

[1] The "contributing factor" standard applies to both retaliation and discrimination claims under the MHRA. *See Wallace v. DTG Operations, Inc.*, 563 F.3d 357, 360 (8th Cir. 2009) (citing *Hill*, 277 S.W.3d at 665).

the claimed discriminatory act.  *See, e.g.*, *Wiedner v. Ferrellgas, Inc.*, 607 S.W.3d 231, 237–39 (Mo. Ct. App. 2020); *Folsom v. Mo. State Highway Patrol*, 580 S.W.3d 645, 650 n.1 (Mo. Ct. App. 2019); *Bram*, 564 S.W.3d at 794–95.  As the timing of the events underlying Cross's claims precede the August 2017 amendment, the Court will apply the "contributing factor" standard here.

### III. Discussion

The record as a whole, and especially the parties' statements of uncontroverted fact, paint a picture rife with disputes as to the lead-up to Cross's firing and the basis for the decision to fire her.  Simply put, there are disputed facts that are directly relevant to the various elements of each of Cross's MHRA claims.  The Court will first discuss the disputes pertinent to Cross's retaliation claim and then will turn to her sexual harassment claim.

As to the first element of retaliation—that the plaintiff complained of discrimination—Cross claims that she complained to Tran on May 10, 2017 that Chambers's conduct was inappropriate, while Defendants claim that such a meeting did not occur, at least not in the manner Cross describes it.  *See* Doc. [91] ¶ 135.  Cross further asserts that she told Chambers his conduct was inappropriate, another claim Defendants dispute.  *Id.* ¶ 141.  As to the second element of retaliation, Adams fired Cross, which qualifies as adverse employment action.  *See Sevage v. City of Independence, Mo.*, No. 07-481-cv-W-DW, 2009 WL 10671881, at *5 (W.D. Mo. Mar. 17, 2009) ("[I]t is undisputed that Plaintiff suffered an adverse employment action, in that he was fired.").

There are numerous fact disputes relevant to the third element, which requires a causal relationship between Cross's complaints to Tran and Chambers and the decision to fire her. Though Tran sent Cross numerous emails related to her work performance before Cross was fired, Cross disputes the context surrounding many of the emails and argues that Tran never

6

communicated to her that she was not doing a satisfactory job.  Then there is the issue of timing. Tran and Chambers recommended firing Cross a short period of time after Cross claims she complained to Tran.  Though Defendants point to caselaw suggesting that timing alone cannot create an inference of cause sufficient to survive summary judgement, see Doc. [69] at 17 and *Withers v. Johnson*, 763 F.3d 998, 1005 (8th Cir. 2014), more than just the timing of Cross's firing could permit the inference here.  Whether Cross was a regular or introductory employee at the time of her firing is disputed, and it appears that Adams's general disciplinary policy differs depending on an employee's introductory status.  *See* Docs. [91] ¶¶ 43, 268–73, [69] at 8.  Whether Adams fired Cross outside the bounds of its ordinary disciplinary policy is relevant to Cross's claim that she was fired because she complained of discrimination.  *See Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125–26 (8th Cir. 2017) (citing *Schafflhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (observing that a plaintiff can show pretext by showing an employer failed to follow its own policies).  Moreover, Cross raises not only the timing of her firing but also the timing of Tran's 165-day report—where Tran recommended firing Cross—as creating an inference of causation.  *See* Doc. [91] ¶¶ 262, 264.  The parties dispute each of these issues, and taking them in the light most favorable to Cross, the Court cannot say that a jury could not infer that Cross's complaints about Chambers contributed in part to her firing.  Defendants have not shown that the undisputed facts entitle them to summary judgment.

     Turning to Cross's sexual harassment claim, there remain outstanding factual disagreements that likely can be resolved only by a determination of the parties' credibility.  There are significant disputes as to Chambers's conduct—how often he interacted one-on-one with Cross and whether he made the comments of which Cross complains, for example.  More specifically, Cross claims that Chambers frequently entered her office one-on-one and moved his hand around

7

in her candy bowl, while Chambers denied the candy bowl incident ever occurred and claims he only once met with Cross privately. *See* Doc. [91] ¶ 125. Chambers also disputes that he said, "If you need something from me, I need something from you," or "I don't think you have what I need." Doc. [91] ¶¶ 125, 131. Regardless of whether Plaintiff's claim is styled as hostile work environment or *quid pro quo* sexual harassment, the law is clear that the frequency and type of conduct is of the utmost importance in determining whether sexual harassment has occurred. *See, e.g.*, *Stone v. McGraw-Hill Glob. Educ. Holdings, LLC*, 126 F. Supp. 3d 1077, 1086 (E.D. Mo. 2015) ("To determine whether a work environment would be objectively offensive to a reasonable person, courts 'examine all the circumstances, including the frequency of the discriminatory conduct, its severity, . . . and whether the conduct unreasonably interfered with the employee's work performance.'" (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005))). Exactly those things are in dispute here.

These factual disagreements are directly relevant to the second, third, and fourth elements of Cross's sexual harassment claim. Matters of credibility are for a jury to resolve at trial, not the Court on a motion for summary judgment. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc))). As a sexual harassment claim in the employment context, this case is particularly fact specific. The Court does not have a full picture of either Chambers's interactions with Cross or the context surrounding those interactions. The number of disputed facts that are relevant to deciding whether Chambers's conduct rises to the level of "unwelcome sexual harassment" or affecting a "term, condition, or

privilege of employment," *Burlison*, 478 S.W.3d at 581, renders summary judgment inappropriate, especially in light of the "contributing factor" standard.

## Conclusion

On the evidence before the Court, genuine disputes of material fact remain in this case. Because Defendants have not demonstrated that undisputed facts entitle it to judgment as a matter of law as required by Fed. R. Civ. P. 56(a), the Court will deny Defendants' Motion for Summary Judgment against Cross.  Additionally, the Court notes that it need not rely on the "report cards" Defendant provided, which are also the subject of Plaintiff's Motion to Strike, Doc. [84], to make this decision.  Therefore, the Court will deny Plaintiff's Motion to Strike as moot and will make the necessary evidentiary rulings for trial purposes at the appropriate time.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment on Claims Brought by Plaintiff Tambra Cross, Doc. [68], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Contract Report Cards from Summary Judgment Record, Doc. [84], is **DENIED** as moot.

Dated this 15th day of December, 2020.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE